UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LYAZAT TOLYMBEKOVA, et al.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**U.S. SECRETARY OF STATE MARCO RUBIO, et al.,**<br><br>**Defendant.** | No. 25-cv-295-ZMF |

## MEMORANDUM OPINION

Since January 2024, Plaintiffs' EB-1A visa applications have been in administrative processing. Plaintiffs now seek an order to compel Defendants and those acting under them to immediately issue a final decision on Plaintiffs' visa applications. *See* Compl. ¶¶ 51–52, ECF No. 1. In response, Defendants filed the instant motion to dismiss. *See* Defs.' Mot. Dismiss, ECF No. 4.

For the reasons set forth herein, the Court will DENY Defendants' motion.

### I.   BACKGROUND

####   A.   Legal Background

The Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1101 et seq., governs the EB-1A visa—an employment-based visa for foreign nationals with extraordinary abilities in the sciences, arts, education, business, or athletics. *See* 8 U.S.C. § 1201. If a consular officer determines that an applicant lacks sufficient information to establish visa eligibility, the officer may refuse the application under § 221(g) of the INA. *See* 8 U.S.C. § 1201(g). § 221(g) provides that:

1

> no visa . . . shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa . . . (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law.

8 U.S.C. § 1201(g).

B.   Factual Background

All three plaintiffs completed visa interviews by January 2024. *See* Compl. ¶¶ 98, 122, 148. Following their interviews, U.S. Citizenship and Immigration Services (USCIS) placed Plaintiffs' applications into administrative processing pursuant to § 221(g) of the Immigration and Nationality Act. *See id.* Plaintiffs' applications have remained in administrative processing since their interviews, a period of at least sixteen months. *See id.*

Plaintiff Lyazat, a citizen of Kazakhstan, holds a PhD in metallurgy, has published more than 90 scientific articles, and was named the "Best University Teacher-2020" in Kazakhstan. *Id.* ¶¶ 88–90. She also holds two patents and two copyright certificates, authored a textbook on materials science, and is a member of The Minerals, Metals & Materials Society. *See id.* ¶¶ 90–91. On September 15, 2023, she submitted a Form I-140 seeking an EB-1A visa as a foreign national with extraordinary abilities. *See id.* ¶ 92. USCIS approved the Form I-140 and forwarded it to the National Visa Center (NVC) for pre-processing. *See id.* ¶ 94. On November 10, 2023, the NVC found Plaintiff Lyazat's application documentarily qualified. *See id.* ¶ 97. On January 23, 2024, Plaintiff Lyazat completed her visa interview. *See id.* ¶ 98. USCIS then placed her application into administrative processing under § 221(g). *See id.* She was asked to submit additional documents, including a resumé, which she promptly did by January 31, 2024. *See id.* ¶ 99. Plaintiff Lyazat's application has been in administrative processing since her interview in

2

January 2024, more than sixteen months ago. *See id.* ¶ 100. Plaintiff Lyazat's husband and son are derivative beneficiaries of Plaintiff Lyazat's I-140 petition and derivative applicants for E-14 and E-15 visas. *See id.* ¶ 93. As such, their applications remain in limbo as long as Plaintiff Lyazat's application is in administrative processing.

The in-limbo status of her and her families visa applications has caused Plaintiff Lyazat severe mental anguish. Because she has been unable to enter the United States, she has been separated from her daughter, a U.S. citizen, for nearly a decade. *See* Compl. ¶ 106. Consequently, she could not attend her daughter's college graduation nor be present to support her daughter when she suffered a neck fracture in a car accident in 2024. *See id.* ¶ 107. Plaintiff Lyazat has also been separated from her sister, a U.S. resident, since 2016, and was forced to miss her sister's wedding, baby shower, gender reveal party, and the birth of her niece. *See id.* ¶ 108.

Plaintiff Dmitrii is a citizen of Russia and a Project Manager with more than fifteen years of experience working in construction. *See id.* ¶¶ 111–113. He has reviewed articles for academic journals and published articles in trade periodicals. *See id.* ¶ 114. On March 17, 2022, Plaintiff Dmitrii submitted a Form I-140 petition seeking an EB-1A visa. *See id.* ¶ 116. USCIS approved the Form I-140 and forwarded it to the NVC for pre-processing. *See id.* ¶ 118. On June 30, 2023, Plaintiff Dmitrii, his wife, and two children submitted the DS-260 immigrant visa application. *See id.* ¶ 120. On August 17, 2023, the NVC found Plaintiff Lyazat's application documentarily qualified. See *id.* ¶ 121. On October 24, 2023, Plaintiff Dmitrii completed his visa interview. *See id.* ¶ 122. USCIS then placed his application into administrative processing under § 221(g). *See id.* Plaintiff Dmitrii was also asked to submit additional documents, which he did by October 29, 2023. *See id.* ¶ 123.

Plaintiff Dmitrii's application has been in administrative processing since his interview in October 2023, more than nineteen months ago. *See id.* ¶ 124. As a result, Plaintiff Dmitrii's livelihood, wellbeing, and career have suffered, as he has been forced to put his family's plans on hold indefinitely and stall his professional development. *See id.* ¶¶ 129–130. The U.S.-based technology company Cartwheel has expressed interest in hiring Plaintiff Dmitrii, an offer which Plaintiff Dmitrii has been unable to accept due to the uncertainty regarding his visa. *See id.* ¶ 127.

Finally, Plaintiff Mavliuda is a citizen of Russia and a make-up artist. *See id.* ¶¶ 134–135. She has won numerous awards for her artistry, has been featured in Russian and U.S. publications, and has done make-up for international fashion shows. *See id.* ¶¶ 137–139. On December 23, 2022, Plaintiff Mavliuda submitted a Form I-140 petition seeking an EB-1A visa. *See id.* ¶ 140. USCIS approved the Form I-140 and forwarded it to the National Visa Center for pre-processing. *See id.* ¶ 142. On October 12, 2023, the NVC found Plaintiff Mavliuda's application documentarily qualified. *See id.* ¶ 147. On December 12, 2023, Plaintiff Mavliuda completed her visa interview. *See id.* ¶ 148. USCIS then placed her application into administrative processing under § 221(g). *See id.* Plaintiff Mavliuda was also asked to submit additional documents, which she did by June 23, 2024. *See id.* ¶ 150. Plaintiff Mavliuda's husband and two children are derivative beneficiaries of her I-140 petition and derivative applicants for E-14 and E-15 visas. *See id.* ¶ 141.

Plaintiff Mavliuda's application has been in administrative processing since her interview more than seventeen months ago. *See id.* ¶ 151. Because her case has remained in processing, she has had to refuse several job offers in the United States and put her career and personal life on hold. *See id.* ¶¶ 155–157.

For each Plaintiff, the State Department Website states the application is "refused" and "[i]f you were informed by the consular officer that your case was refused for administrative

4

processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete." *Id.*

    C.    <u>Procedural Background</u>

On January 31, 2025, Plaintiffs filed a Complaint against Marco Rubio, in his official capacity as U.S. Secretary of State, and Robert Jachim, in his official capacity as Director of Screening, Analysis, and Coordination. *See id.* ¶¶ 56–57. Plaintiffs allege Defendants and those working under them improperly withheld action on the Plaintiffs' visa applications and seek an order to compel Defendants and those acting under them to immediately and forthwith take all appropriate action to issue a final decision on Plaintiffs' immigrant visa applications. *See id.* ¶¶ 51–52.

On April 1, 2025, Defendant filed Motion to Dismiss pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) and 12(b)(1). *See* Defs.' Mot. Dismiss. The motion is now ripe for decision. *See* Pls.' Opp'n Defs.' Mot. Dismiss ("Pls.' Opp'n"), ECF No. 5; Defs.' Reply Supp. Defs.' Mot. Dismiss ("Defs.' Reply"), ECF No. 9. On April 28, 2025, this case was referred to the Honorable Magistrate Judge Faruqui to conduct all proceedings and order entry of final judgment. *See* Order Referring Case to Mag. Judge 1, ECF No. 8.

**II.    LEGAL STANDARD**

    A.    <u>Subject Matter Jurisdiction – Federal Rules of Civil Procedure 12(b)(1)</u>

A court must dismiss a complaint that "lack[s] ... subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). On a 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The court will "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"

5

*Am. Nat'l Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

      B.    <u>Stating a Claim Upon Which Relief Can Be Granted – Federal Rules of Civil Procedure 12(b)(6)</u>

In addition, a court must dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court must "treat the complaint's factual allegations as true . . . and . . . grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations and quotation marks omitted). "However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

### III. DISCUSSION

      A.    <u>The Doctrine of Consular Nonreviewability</u>

Defendants claim that the Doctrine of Consular Nonreviewability bars Plaintiffs' claims. *See* Defs.' Mot. Dismiss. at 9–12. This argument is unpersuasive.

The doctrine of consular nonreviewability establishes that a consular officer's final decision to approve or deny a visa application is not subject to judicial review. *See Dep't of State v. Muñoz*, 602 U.S. 899 (2024). However, the doctrine is not triggered until a consular officer has made a final decision regarding a visa application. *See Nine Iraqi Allies Under Serious Threat*

6

*Because of His Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 290–91 (D.D.C. 2016). Defendants argue § 221(g) refusals constitute final decisions and thus are unreviewable. *See* Defs.' Mot. Dismiss. at 9–12. Not so.

First, defendants rely on the unpublished *Karimova* D.C. Circuit opinion to argue that an initial visa refusal under INA § 221(g) is a final decision. This argument is irrelevant, as "[t]his Court does not follow the unpublished Karimova decision." *Haeri Mehneh v. Blinken*, No. 24-cv-1374, slip op. at 6 (D.D.C. Dec. 16, 2024); *see also Hajizadeh v. Blinken*, No. 23-1766, 2024 WL 3638336, at *3 n.3 (D.D.C. Aug. 2, 2024) ("This court has considered *Karimova* but declines to follow it."); *Sheikhalizadehjahed v. Gaudiosi*, No. 24-cv-1136, 2024 WL 4505648, at *7 n.6 (E.D. Cal. Oct. 16, 2024). "A panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." D.C. Cir. Rule 36(e)(2).

Furthermore "even if the State Department chooses to characterize a [§] 221(g) notification as a 'refusal,'" it is "an interim decision is not sufficiently final to warrant the application of the doctrine." *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020). One need only read Plaintiffs' visa application statuses on the on the State Department CEAC website to realize the § 221(g) determinations were never intended to be final. Plaintiffs' application statuses plainly inform them "You will receive another adjudication once such processing is complete." Compl. ¶ 100.

Other courts have found that a § 221(g) "refusal" is "not a final decision" and is reviewable. *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997). The binding Code of Federal Regulations ("C.F.R."), which governs the State Department's internal operations, establishes the "Refusal procedure" for visa applications:

> When an immigrant visa is refused, an appropriate record shall be made in duplicate on a form prescribed by the Department. The form shall be signed and dated by the consular officer. The consular officer shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of

7

>law or implementing regulation under which administrative relief is available. Each document related to the refusal shall then be attached to Form DS–230 for retention in the refusal files. Alternatively, each document related to the refusal shall be electronically scanned and electronically attached to Form DS–260 for retention in the electronic refusal files.

22 C.F.R. § 42.81(b); *see also* Pls.' Opp. at 26. Therefore, for a visa determination to qualify as a "refusal" and be a nonreviewable "final decision," it must meet these requirements. *See Patel*, 134 F.3d at 932.

Defendants have provided no evidence the § 221(g) determinations given to Plaintiffs meet these requirements, and indeed it is clear they do not. First, Plaintiffs' visa application statuses plainly provide no "statutory provision of law or implementing regulation under which administrative relief is available." 22 C.F.R. § 42.81(b); *see also* Compl. ¶¶ 100, 124, 151 (Plaintiffs' application statuses read that they will remain refused during administrative processing and Plaintiffs would receive another adjudication once administrative processing has concluded but fail to provide any statutory or regulatory means of relief). Indeed, the Foreign Affairs Manual (FMA), the "authoritative source for the [State] Department's organization structures, policies, and procedures that governs the operations of the State Department" makes clear that applicants who receive § 221(g) refusals have no path to statutory or administrative relief. U.S. Dep't of State, *Foreign Affairs Manual* (FAM), https://fam.state.gov/ (last visited Aug. 14, 2025). For example, while the FMA states that applicants who are found ineligible under INA § 214(b) are "free to re-apply for a visa," applicants, such as Plaintiffs, who receive § 221(g) refusals cannot re-apply and must "wait for the results of additional administrative processing or comply with a request for additional documentation or information within one year of the visa interview." 9 FAM 403.10-3(A)(5). Clearly, then, § 221(g) refusals provide Plaintiffs no avenue for relief, indicating the decisions are not final.

Moreover, Defendants have provided no evidence Plaintiffs' documents have been submitted for retention in the electronic refusal files, as required by 22 C.F.R. §42.81(b).

Notably, "[n]o provision for suspension of the visa applications or for a temporary refusal is provided in 22 C.F.R. § 42.81." *Patel*, 134 F.3d at 932.

We therefore conclude Plaintiffs' § 221(g) determinations are not refusals within the meaning of 22 C.F.R. § 42.81(b) and thus are not final decisions to which the doctrine of consular nonreviewability applies. *See Patel*, 134 F.3d at 932.

### B. The Doctrine of Sovereign Immunity

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "[C]laims barred by sovereign immunity must be dismissed for lack of subject matter jurisdiction." *Nepal v. U.S. Dep't of State*, 602 F. Supp. 3d 115, 130 (D.D.C. 2022); *See F.D.I.C.*, 510 U.S. at 475. However, Acts of Congress can waive this immunity. *See Bowen v. Massachusetts*, 108 S. Ct. 2722, 2728 (1988).

Defendants assert that to overcome their 12(b)(1) motion, Plaintiffs must prove the "'government has unequivocally waived its immunity.'" Defs.' Reply at 2 (quoting *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003). Congress has done just that; the Administrative Procedure Act (APA) contains such "waiver of sovereign immunity in section 702." *See Bowen*, 108 S. Ct. at 2735. The APA provides:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on ground that it is against the United States.

5 U.S.C. § 702. Here, Plaintiffs seek injunctive, not monetary relief. *See* Compl. ¶ 1. Further, visa adjudication is an agency action the State Department is required to

9

complete. *See infra* at III.C. Thus, the APA waives sovereign immunity in this case. *See* 5 U.S.C. § 702.

        C.      <u>Clear, Nondiscretionary Duty</u>

"To state a claim for unreasonable delay [under the APA], [p]laintiffs must . . . allege that the agency 'failed to take a discrete agency action that it is required to take[.]'" *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). Defendants argue that Plaintiffs fail to identify a discrete agency action that consular officers are required to take. Not so.

"Granting or refusing a visa to [a plaintiff] who has been interviewed is clearly a discrete agency action . . . required by . . . the APA." *Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023). The APA "imposes a general but nondiscretionary duty upon the [State Department] to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes [this Court] to 'compel agency action unlawfully withheld or unreasonably delayed,' *id*. § 706(1)." *Haeri Mehneh*, slip op. at 6. (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003)).

Moreover, the State Department's own guidelines impose a clear, nondiscretionary duty upon consular officers to adjudicate cases in administrative processing. *See* 22 C.F.R. § 42.81(a). Issuance or refusal is mandatory. *See id.* "When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of INA and the implementing regulations, the consular officer must either issue or refuse the visa[.]" *Id*. "There are no exceptions to the rule that once a visa application has been properly completed and executed before a consular officer, a visa must be either issued or refused." 9 FAM 504.11-2(A). Per the *Accardi* doctrine, administrative agencies are bound to follow their own guidelines. *See United*

10

*States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).[1] Therefore, Defendants are bound to follow the rules laid out in federal regulations. *See* C.F.R. § 42.8(a).

As established, this Court does not follow the unpublished *Karimova* decision nor its commentary on consular officers' duties. *Haeri Mehneh*, slip op. at 6. Even so, *Karimova* narrowly applies to "'Section 555(b) of the APA as the source of the consular officer's alleged duty to act'" and is thus inapplicable. *Id.* (quoting *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024). *Karimova* does not address the duties Plaintiffs raise under the INA and its implementing regulations. 2024 WL 3517852. This Court, however, "finds that they create a duty to act." *Haeri Mehneh*, slip op. at 6.

Defendants plainly failed to uphold this duty, and in doing so have subjected Plaintiffs to prolonged purgatory. During this period, Plaintiffs have been unable to visit family in times of joy and crisis, advance their distinguished careers in the United States or elsewhere, or establish security and stability for their families. Defendants cannot shirk their responsibility to provide Plaintiffs a clear, certain decision regarding their visa applications.

---

[1] The *Accardi* doctrine asserts federal agencies must follow their own regulations and procedures, and that if an agency fails to do so, its actions can be challenged in court. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). "Regulations with the force and effect of law supplement the bare bones" of federal statutes, and that, even in areas of expansive discretion, agencies must follow their own "existing valid regulations." *Id.* at 266, 268. Two decades later, the Supreme Court applied the doctrine to strike down a Bureau of Indian Affairs benefits determination because it did not comply with the procedures set forth in the agency's internal manual. *See Morton v. Ruiz*, 94 S. Ct. 1055 (1974). "In doing so, the Court noted that Accardi's teachings apply with particular force in those cases in which 'the rights of individuals are affected,' stating that 'it is incumbent upon agencies to follow their own procedures . . . even where [they] are possibly more rigorous than otherwise would be required.'" *Damus v. Nielsen*, 313 F. Supp. 3d 317, 335 (D.D.C. 2018) (quoting *Morton*, 94 S. Ct. at 1074). In this District, to determine whether Accardi applies to such policies, judges consider (1) whether the policies bind the agency and (2) whether the policies are "'procedural rules benefiting the agency'" or "'procedural rules benefitting the party otherwise left unprotected.'" *Damus*, 313 F. Supp. 3d at 336 (quoting *Lopez v. FAA*, 318 F.3d 242, 247 (D.C. Cir. 2003)). In *Damus*, the Court did not find an *Accardi* problem when Plaintiff's visa interview was not scheduled. *Id.* However, in contrast to the case at hand, the policies at issue did not protect individual rights or "impose binding norms on the agency." *Id.* In contrast, the adjudication of visas is a binding norm of the State Department and directly affects individuals' rights to have their visa applications adjudicated.

D.  *TRAC* Factors

Plaintiffs claim, on the merits, that Defendants have unreasonably delayed adjudicating their visa applications. *See* Compl. ¶ 2. "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr.* ("TRAC") *v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984)). Unreasonable delay claims are analyzed using the six "TRAC" factors establish in *TRAC*.[2] *See id.*

Here, the Court declines to analyze the *TRAC* factors. Neither party briefed the *TRAC* factors, leaving this Court with limited information to assess whether Defendants' actions might be unreasonable. *See* Defs.' Mot. Dismiss; Pls.' Opp'n; Defs.' Reply. "Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc*, 336 F.3d at 1100. Because the parties have not briefed the fact-intensive *TRAC* factors, the record is inadequate to resolve the statutory issue pending.

**IV.   CONCLUSION**

For the foregoing reasons, the Court will DENY Defendants' motion to dismiss the case.

Date: September 5, 2025

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

---

[2] The six *TRAC* factors are: "(1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *See TRAC*, 750 F.2d at 80 (internal citations and quotation marks omitted).